UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY C. ARNOW and JILL A. ARNOW,

                                    Plaintiffs,

                                                            1:18-CV-00514

v.

                                                            (BKS/TWD)

OCWEN LLC,

                                    Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

JEFFREY C. ARNOW
JILL A. ARNOW
Plaintiffs *pro se*
145 Maple Avenue
Scotia, New York 12302

HINSHAW & CULBERTSON LLP                         SCHUYLER B. KRAUS, ESQ.
Attorneys for Defendant
800 Third Avenue, 13th Floor
New York, New York 10022

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        The Hon. Brenda K. Sannes, U.S. District Judge, has referred Plaintiffs Jeffrey C. Arnow

and Jill A. Arnow's *pro se* amended complaint (Dkt. No. 12) to this Court for a report and

recommendation including: (1) initial screening pursuant to 28 U.S.C. § 1915(e)[1]; (2) Plaintiff's

_____

        [1] Jill A. Arnow was not included as a named Plaintiff in the original complaint (Dkt. No. 1), and although she is named as a Plaintiff in the caption of the amended complaint (Dkt. No. 12), she has not been listed as a Plaintiff on the docket. The Court will treat her as a party Plaintiff for purposes of screening the amended complaint. Jeffrey C. Arnow was granted *in forma pauperis* status upon initial review. (Dkt. No. 9.) Jill A. Arnow has not filed an application to proceed *in forma pauperis*. Nonetheless, the Court will, solely for purposes of the matters now before the Court, allow both Plaintiffs to proceed *in forma pauperis*. In the event

request for a temporary restraining order (Dkt. No. 6); and (3) the request filed by Hinshaw &

Culbertson, LLP ("Hinshaw firm"), counsel for Defendant Ocwen Loan Servicing LLC

("Ocwen"), incorrectly sued as Ocwen L.S., for dismissal of Plaintiffs' amended complaint.

(Dkt. No. 14.)  Also before the Court is Plaintiff Jeffrey C. Arnow's second motion for

appointment of counsel.  (Dkt. No. 15.)

## I.    LEGAL STANDARD FOR INITIAL REVIEW

Inasmuch as Plaintiffs are presently proceeding *in forma pauperis*, the Court must

consider the sufficiency of the allegations set forth in the amended complaint in light of 28

U.S.C. §§ 1915(e).  Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the

court shall dismiss the case at any time if the court determines that . . . the action

. . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.

§ 1915(e)(2)(B)(i)-(iii).[2]  Additionally, if a court "determines at any time that it lacks subject-

matter jurisdiction, the Court must dismiss the action."  Rule 12(h)(3) of the Federal Rules of

Civil Procedure; *see also Widad v. Brooklyn Public Library*, No. 15-CV-4312 (MKB), 2015 WL

7159796, at *1 (E.D.N.Y. Nov. 13, 2015)[3] (dismissing state law claims for lack of subject matter

---

this matter is not finally disposed of on the initial review of Plaintiff's amended complaint, Jill
A. Arnow will be required to pay the filing fee or submit an application and be granted leave to
proceed *in forma pauperis* before going forward with the action.

[2]   To determine whether an action is frivolous, a court must look to see whether the
complaint "lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319,
327 (1989).

[3]   Copies of all unpublished decisions cited herein will be provided to Plaintiff in
accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

jurisdiction under Fed.R.Civ.P. 12(h)(1) on initial review pursuant to 28 U.S.C. § 1915(e)).

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss Plaintiffs' amended complaint if they have stated "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged    but it has not "show[n] that the pleader is entitled to relief." *Id*. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotations marks and alterations omitted).

3

Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## II.    PROCEDURAL BACKGROUND

Plaintiff Jeffrey C. Arnow submitted his original complaint for filing on April 30, 2018. (Dkt. No. 1.)  The named Defendants were Ocwen L.S. and its C.E.O., Ronald Faris, and V.P. Associate General Counsel, Eric Spett.  *Id.*  Plaintiff apparently jumped the gun on service of a complaint on the Defendants because attorney Schuyler Kraus, Esq., an attorney with the Hinshaw Firm, filed a notice of appearance on behalf of all three original Defendants on May 16, 2018, prior to the Court's initial review of the complaint under 28 U.S.C. § 1915(e).  (Dkt. No. 5.)  Defendants thereafter, on May 25, 2018, again before initial review by the Court, filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 7.)  The motion was denied as moot by Judge Sannes in her September 5, 2018, Order adopting this Court's recommendation allowing Plaintiff forty-five days to submit an amended complaint for court review.  (Dkt. Nos. 9 at 11; 13.[4])

Plaintiff Jeffrey C. Arnow made two filings with the Clerk after submission of his original complaint and prior to Judge Sannes's September 5, 2018, Order.  On May 24, 2018, Plaintiff filed a letter motion asking to see all "papers and notes, assignments and deeds" and requesting that a temporary restraining order be issued because "there is something not right in this case."  (Dkt. No. 6.)  On August 22, 2018, Plaintiff filed an amended complaint adding Jill A. Arnow as a Plaintiff and naming Ocwen LLC as the sole Defendant.  (Dkt. No. 12.)  In her

---

[4] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

September 5, 2018, Order, Judge Sannes referred Plaintiffs' May 24, 2018, letter (Dkt. No. 6) to this Court, and also referred Plaintiff's amended complaint for initial review. (Dkt. No. 13.) On September 7, 2018, Ocwen's counsel submitted a premature letter motion to the Court requesting dismissal of Plaintiffs' amended complaint before the Court for report and recommendation. (Dkt. No. 14.) Plaintiff Jeffrey C. Arnow thereafter filed his second motion for appointment of counsel on September 17, 2018. (Dkt. No. 15.)

## III.    THE CLAIMS IN PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Jeffrey A. Arnow's original complaint was so devoid of factual content the only thing the Court could glean from its sparse allegations, along with the Court's review of filings in both Plaintiffs' numerous Chapter 13 bankruptcy proceedings in the Northern District of New York, was that Plaintiff's claim involved foreclosure proceedings on real property owned by him and his wife at 145 Maple Avenue, Scotia, New York. (*See* Dkt. No 9 at 8-9, n.8 and n.9.)

In their amended complaint, Plaintiffs allege that in August 1998, after Coastal Capital Corp. had transferred the note on their mortgage to Wells Fargo Bank ("Wells Fargo"), Ocwen, as servicer of Plaintiff's mortgage for Wells Fargo, engaged in a fraudulent scheme whereby they attempted to change the terms of Plaintiffs note and mortgage by forcing them to pay excessive amounts into an escrow account for insurance. (Dkt. No. 12 at 2.) Plaintiffs claim that Ocwen's employees or agents threatened on numerous occasions to foreclose on their property if they did not comply with the escrow requirements imposed by Ocwen. *Id*. According to Plaintiffs, Ocwen refused to accept the lower amount Plaintiffs believed they were required to pay and ultimately brought a fraudulent and dishonest foreclosure action against them in New York State Supreme Court, Schenectady County. *Id*. Plaintiffs acknowledge that Wells Fargo was awarded

a judgment of foreclosure in the proceeding.  (Dkt. No. 12 at 2.)

Plaintiffs allege that the judgment of foreclosure was obtained fraudulently because of the escrow account issue and that Ocwen thereafter conducted a foreclosure sale based upon the fraudulently obtained judgment on April 18, 2018, in violation of the automatic stay provision of the Bankruptcy Act, 11 U.S.C. § 362, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. *Id*. at 1.[5]  *See Balarezo v. Ocwen Loan Servicing, LLC*, No. 17 CV 3033 (VB), 2017 WL 4857598, at *4 (Oct. 25, 2017) (the elements of a claim under the FDCPA are that "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.").

Plaintiffs also allege that the fraudulently obtained judgment of foreclosure and subsequent foreclosure sale violated New York General Business Law ("GBL") § 349.  *Id*. at 2.  GBL § 349 protects against "[d]eceptive acts or practices in the conduct of any business, trade[,] or commerce or in the furnishing of any service in New York State."  In order "[t]o state a prima facie claim under [§ 349], a plaintiff must allege [facts plausibly showing] that the defendant [i] engaged in consumer-oriented conduct, [ii] that the conduct was materially misleading; and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Weisblum*

---

[5]    The Clerk's Docket for Plaintiff Jill A. Arnow's Chapter 13 bankruptcy proceeding filed on March 19, 2018 does not show that she ever challenged the alleged violation of the automatic stay during the course of the bankruptcy proceeding, which was dismissed by the Bankruptcy Court on July 16, 2018.  *See In re Jill A. Arnow*, Bankruptcy Petition #: 18-10435-1-rel (Brktcy. N.D.N.Y., Mar. 19, 2018).

*v. Prophase Labs, Inc*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015).

## IV.    ANALYSIS OF THE CLAIMS IN PLAINTIFFS' AMENDED COMPLAINT

Even assuming for purposes of this initial review that the Court, through an

overabundance of liberality in its construction of Plaintiffs' amended complaint, were able to

construe the amended complaint to state a claim under the FDCPA or GBL § 349, the Court finds

that there is no subject matter jurisdiction in federal district court over Plaintiff's claims related

to the judgment of foreclosure and sale and the subsequent foreclosure sale pursuant to the

*Rooker-Feldman* doctrine.  "The *Rooker-Feldman* doctrine provides that, in most circumstances,

the lower federal courts do not have subject matter jurisdiction to review final judgments of state

courts." *Morrison v. City of New York*, 591 F.3d 109, 112 (2d Cir. 2010).  *Rooker-Feldman*

applies to federal actions "brought by state-court losers complaining of injuries caused by state-

court judgments rendered before the district court proceedings commenced and inviting district

court review and rejection of those judgments."[6] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

544 U.S. 280, 284 (2005).

The four requirements for application of the Rooker-Feldman doctrine are:

> First, the federal-court plaintiff must have lost in state court.
> Second, the plaintiff must complain of injuries caused by a state-
> court judgment.  Third, the plaintiff must invite district court
> review and rejection of that judgment.  Fourth, the state-court
> judgment must have been rendered before the district court
> proceedings commenced.

*Hoblock v. Albany Cty. Bd. of Election*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks,

---

[6] A federal court defendant may invoke the *Rooker-Feldman* doctrine without having
been a party to the state court action.  *See Omotosho v. Freeman Investment and Loan*, 136 F.
Supp. 3d 235, 246-47 (D. Conn. 2016).

footnote, and alterations omitted).  *Rooker-Feldman* bars federal claims, whether raised in state court or not, that allege injury based on a state court judgment and seek review and reversal of that judgment   claims that are "inextricably intertwined with the state judgment."  *Id*.  (internal quotation marks omitted).  *Sua sponte* dismissal of a complaint upon initial review under the *Rooker-Feldman* doctrine is proper.  *See, e.g., Koziel v. City Court of Yonkers*, 351 F. App'x 470 (2d Cir. 2009) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter based on the *Rooker-Feldman* doctrine); *Brooks v. Ross*, 76 F. App'x 356 (2d Cir. 2003) (same); *Talley v. LoanCare Servicing, Div. of FNF*, No. 15-CV-5017 (JMA) (AKT), 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (action challenging state court mortgage foreclosure judgment dismissed on initial review under the *Rooker-Feldman* doctrine).

Plaintiffs claim that Ocwen, in violation of the FDCPA, fraudulently obtained a judgment of foreclosure in Schenectady County Supreme Court which led to a fraudulent foreclosure sale. (Dkt. No. 12 at 2-3.)  The Court takes judicial notice of the: (1) amended verified complaint in the Schenectady County Supreme Court foreclosure action involving the property at issue, filed by Wells Fargo Bank Minnesota, N.A., as Trustee, against Plaintiffs on or about June 13, 2006 (Dkt. No. 7-8 at 7-35); (2) amended judgment of foreclosure and sale in the foreclosure action, signed by the Hon. Barry D. Kramer, Acting J.S.C., on November 17, 2008, and entered on December 22, 2008 (Dkt. No. 7-10 at 2-8); and (3) Referee's Deed in the foreclosure sale of the property at issue made March 19, 2018, signed by the Referee on March 30, 2018, and recorded in the Schenectady County Clerk's Office on May 2, 2018.  (Dkt. No. 7-11 at 1-4.)[7]

---

[7]  Judicial notice may be taken of the state court complaint and foreclosure documents as they are matters of public record and incorporated by reference to the foreclosure proceeding and foreclosure sale in Plaintiffs' amended complaint.  *See, e.g., Kingston v. Deutsch Bank Nat. Trust*

The Second Circuit has held that a claim that a foreclosure judgment was fraudulently obtained is barred by the *Rooker-Feldman* doctrine. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (claim that defendants engaged in fraud during foreclosure action by misrepresenting that they had standing to seek foreclosure barred under the *Rooker-Feldman* doctrine because fraud claim would require federal court to review state court proceeding and determine that the foreclosure judgment was issued in error).

Based upon the allegations in Plaintiffs' amended complaint and the documents of which it has taken judicial notice, the Court finds that the requirements for the application of the *Rooker-Feldman* doctrine are satisfied in this case as to Plaintiffs' claims for violation of the FDCPA and GBL § 349 with respect to the judgment of foreclosure and sale. Plaintiffs clearly lost in state court and are complaining of injuries caused by the state court foreclosure judgment, including the foreclosure sale that followed from the judgment, which is inextricably intertwined with the judgment of foreclosure sale and thus barred under the *Rooker-Feldman* doctrine. Plaintiffs are inviting district court review and rejection of the judgment of foreclosure and sale and subsequent foreclosure sale based upon Ocwen's alleged fraud, and the state court judgment of foreclosure and sale was entered on December 22, 2008, well before Plaintiffs commenced this action.

Based upon the foregoing, the Court finds that there is no subject matter jurisdiction over Plaintiff's FDCPA and GBL § 349 claims regarding the state court judgment of foreclosure and sale and the subsequent foreclosure pursuant to the *Rooker-Feldman* doctrine and recommends

---

*Co.*, No. 12-CV-6257, 2013 WL 1821107, at *1 n.2 (E.D.N.Y. April 30, 2013) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

dismissal of Plaintiffs' amended complaint for lack of subject matter jurisdiction on initial review.[8]

## V.    REMAINING ISSUES

In light of the Court's recommendation that Plaintiffs' amended complaint be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, the Court also recommends that Plaintiff Jeffrey C. Arnow's May 24, 2018, letter motion asking to see all "papers and notes, assignments and deeds" and requesting a temporary restraining order (Dkt. No. 6), and Defendant's letter motion requesting dismissal of Plaintiffs' amended complaint both be denied as moot.  (Dkt. No. 14.)  Finally, the Court denies Plaintiff Jeffrey C. Arnow's second motion for the appointment of counsel (Dkt. No. 15) as moot in light of its recommendation that Plaintiffs' amended complaint be dismissed for lack of subject matter jurisdiction.  Even if the Court were not recommending dismissal, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed.  *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997).  The denial is without prejudice so that Plaintiffs will not be precluded from making a subsequent request for appointment of counsel in the event

---

[8]    Plaintiffs have not alleged diversity jurisdiction with regard to their state law claim under GBL § 349.  (See Dkt. No. 12.)  Even if they had, courts in this Circuit have found that the *Rooker-Feldman* doctrine bars suits even where diversity jurisdiction otherwise exists.  *See Ford v. Dep't of Soc. Servs.*, No. 10 Civ 3800(RWS), 2011 WL 1458138, at *5 (S.D.N.Y. Mar. 22, 2011 (citing cases); *Ballyhighlands, Ltd. v. Bruns*, 1999 WL 377098, at *2 (2d Cir. May 28, 1999) (rejecting the argument that *Rooker-Feldman* did not apply because it was a diversity suit with a "separate action" for trespass and ejectment, explaining that "[s]imply stated, any action seeking to overturn a state court judgment, and any action that is 'inextricably intertwined" with a state court judgment . . . is barred from being brought in federal district court.") (unpublished); *Papeskov v. Nitis*, No. 12 Civ. 1740 (ARR), 2012 WL 1530731, at *3 (E.D.N.Y. April 27, 2012) (holding that "the court need not finally determine whether plaintiff has established diversity jurisdiction in this instance as plaintiff's claims are barred by the *Rooker-Feldman* doctrine.")

the District Court allows the action to proceed or grants Plaintiffs' leave to file a second amended complaint.

ACCORDINGLY, it is hereby

RECOMMENDED that Plaintiffs' amended complaint (Dkt. No. 12) be *sua sponte* dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1915(e) and Fed.R.Civ.P. 12(h)(3); and it is further

RECOMMENDED that Plaintiff Jeffrey C. Arnow's letter motion for documents and a temporary restraining order be **DENIED** as moot (Dkt. No. 6); and it is further

RECOMMENDED that Defendant's letter motion for dismissal of Plaintiffs' amended complaint (Dkt. No. 14) be **DENIED** as moot; and it is hereby

ORDERED that Plaintiff Jeffrey C. Arnow's second motion for the appointment of counsel (Dkt. No. 15) be **DENIED** as moot without prejudice; and it is further

ORDERED that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

---

[9]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.


Dated: October 31, 2018
        Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2017 WL 4857598
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Bolivar BALAREZO and
Raquel C. Balarezo, Plaintiffs,
v.

OCWEN LOAN SERVICING, LLC, Merscorp
Holdings Inc. f/k/a Merscorp/mortgage
Electronic Registration Systems and
Seneca Mortgage Servicing, Defendants.

17 CV 3033 (VB)
|
Signed October 24, 2017
|
Filed 10/25/2017

**Attorneys and Law Firms**

Bolivar Balarezo, Port Chester, NY, pro se.

Raquel C. Balarezo, Port Chester, NY, pro se.

Brett Lawrence Messinger, Brian Jeffrey Slipakoff, Duane
Morris LLP, Philadelphia, PA, Stephen William Miller,
Harris, Wiltshire & Grannis, LLP, Washington, DC, for
Defendants.

## OPINION AND ORDER

Vincent L. Briccetti, United States District Judge

 **\*1** Plaintiffs Bolivar Balarezo and Raquel C. Balarezo,
proceeding pro se, bring this action alleging defendants
violated the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. § 1692, and state law, in
connection with a mortgage on plaintiffs' property.

Plaintiffs originally filed their complaint on July 28, 2016,
in New York State Supreme Court, Westchester County.
On April 26, 2017, defendant Ocwen Loan Servicing, LLC
("Ocwen") removed the case to this Court on the ground
that subject matter jurisdiction exists by virtue of the
FDCPA claim.

Now before the Court are two motions to dismiss the
complaint pursuant to Rules 12(b)(5) and 12(b)(6) of
the Federal Rules of Civil Procedure, filed separately
by defendants Ocwen and Seneca Mortgage Servicing
("Seneca"). (Docs. ##6, 15).

Defendant Merscorp Holdings Inc. ("Merscorp") has not
appeared in the case to date.

For the reasons set forth below, Ocwen's and Seneca's
motions are GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C.
§ 1331.

## BACKGROUND

It is difficult to decipher plaintiffs' allegations, as
the complaint is largely unintelligible. Nevertheless, in
deciding the pending motions, the Court accepts as true
all well-pleaded factual allegations in the complaint and
draws all reasonable inferences in plaintiffs' favor.

On December 14, 2004, plaintiffs purchased property
located on 67 Spring Street, Port Chester, NY 10573 ("the
property"). Plaintiffs allege defendants failed or refused to
answer a debt validation request, required by law. (Compl.
¶ 10). They also allege defendant Ocwen made an invalid
assignment of a mortgage. However, plaintiffs include in
the body of their complaint the text of an assignment of
mortgage, dated May 23, 2012, of a different property in
Suffolk County. (Compl. ¶ 11). Ocwen is not mentioned
in this assignment of mortgage.

In addition, plaintiffs refer to several documents by
sixteen-digit document identification numbers, calling
them "bogus" for several reasons, including because
defendants allegedly "have no interest" in them, or
because plaintiffs are not "the borrower." (Compl. ¶¶
13, 15). They allege at least one of these documents
"attempts to divest Plaintiff of All her Rights and interest
in the property and puts a Cloud on Plaintiff's Title." (Id.
¶ 15). Among other incoherent allegations, plaintiffs
allege at least two documents "were unauthorized also
money laundering a BOGUS loan Documents which was
silent fraud and money laundering with several financial
transactions in order to conceal their identity, source,
and/or destination of unauthorized money." (Id. ¶ 16).

Case 1:18-cv-00514-BKS-TWD    Document 16    Filed 10/31/18    Page 14 of 48
Balarezo v. Ocwen Loan Servicing, LLC, Slip Copy (2017)

2017 WL 4857598

Finally, plaintiffs allege defendants "never had possession of the original Note and mortgage, and therefore had no rights to make 'required notifications of a default under the terms of the Note and Mortgage,' as stated by Plaintiff." (Compl. ¶ 25).

## DISCUSSION

I. Standards of Review

A. Rule 12(b)(5)
"Where a defendant moves for dismissal under Rules 12(b)(2), (5), and (6), the Court must first address the preliminary questions of service and personal jurisdiction." Hertzner v. U.S. Postal Serv., 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007) (internal citations omitted). [1]

**\*2** "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2008) (internal quotations omitted).

When considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process, courts must look to matters outside the complaint to determine whether it has jurisdiction. Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

Plaintiffs bear the burden of proving service of process was adequate. Id.

"In measuring sufficiency of process before removal, the court looks to standards established by state law." Gay v. Carlson, 1991 WL 190584, at *5 (S.D.N.Y. Sept. 17, 1991), aff'd, 60 F.3d 83 (2d Cir. 1995).

B. Rule 12(b)(6)
In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion

to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). "Even in a pro se case, however ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiffs have not pleaded. Id.

## II. Service of Process

A. Ocwen
Ocwen argues the complaint must be dismissed against it because it was never properly served.

The Court agrees.

Under New York law, service can be made with a "summons and complaint, summons with notice, third-party summons and complaint, or petition with a notice of petition or order to show cause," and such service "shall be made within one hundred twenty days after the commencement of the action or proceeding." CPLR § 306-b. According to the plain language of this rule, a complaint without a summons does not suffice to effect proper service. That is because "[n]otice received by means other than those authorized by statute does not bring a

defendant within the jurisdiction of the court." *Macchia v. Russo*, 67 N.Y.2d 592, 595 (1986). The statute clearly requires service of a summons (or a petition or notice of petition or order to show cause) on the defendant.

**\*3** In addition, under New York limited liability law, service on a foreign limited liability company—like Ocwen [2] —is to be made "by personally delivering to and leaving with the secretary of state or his or her deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee." NY Limit. Liab. Co. § 303(a).

Here, Ocwen asserts the complaint was sent to it (i) without the summons, (ii) to an address not associated with Ocwen, and (iii) by mail.

In their opposition to Ocwen's motion to dismiss, plaintiffs appear to argue service was proper because the complaint was served on Ocwen at the address of a law firm. (Opp'n at ¶ 1). However, service on an attorney not authorized to accept service is not effective. *See Williams v. DRBX Holdings, LLC*, 80 A.D.3d 534, 534 (1st Dep't 2011) (service improper where "plaintiff served defendant's attorneys instead of serving the Secretary of State, as required by Limited Liability Company Law § 303," and noting "[t]he fact that defendant's attorneys would have received a copy of process from the Secretary of State does not avail plaintiff") (citations omitted).

Nothing before the Court suggests the law firm mentioned in plaintiffs' opposition was authorized to accept service on behalf of Ocwen. In addition, it is irrelevant that the complaint eventually found its way to Ocwen via other means. *See Macchia v. Russo*, 67 N.Y.2d at 595 ("the fact that a defendant has received prompt notice of the action is of no moment" where service is improper). Moreover, plaintiffs' time to effect proper service on defendants has long passed.

With no evidence of proper service in the record, and no valid legal arguments responding to the assertion that service was insufficient, plaintiffs have failed to shoulder their "burden of proving service of process [on Ocwen] was adequate." *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d at 251.

Accordingly, the complaint is dismissed against Ocwen.

### B. Seneca

Seneca claims it was never served in connection with this case, and was only made aware of the lawsuit when it received Ocwen's notice of removal.

Seneca's motion, made over five months ago, is unopposed by plaintiffs. Nothing in the record suggests there was ever attempted service of process on Seneca and plaintiffs have made no effort to meet their "burden of proving service of process was adequate." *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d at 251.

Accordingly, the complaint is dismissed against Seneca as well. [3]

### III. Failure to State a Claim

**\*4** In the alternative, defendants Ocwen and Seneca argue plaintiffs' complaint must be dismissed for failure to state a claim.

The Court agrees.

The only federal cause of action identifiable in the complaint is a violation of the FDCPA.

"To establish a violation under the Act, '(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (citing *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014)).

Here, plaintiffs' complaint is devoid of factual allegations necessary to state the elements of a FDCPA claim. For example, plaintiffs do not adequately allege defendants qualify as debt collectors for the purposes of the FDCPA. (*See* Ocwen Br. at 6). Moreover, plaintiffs' allegations that "Defendants either fail[ed] or refus[ed] to answer the validation request" and that "as a result of this misstep[,] Defendants are in violation" of the FDCPA (Compl. ¶ 10), do not sufficiently explain what happened or why plaintiffs believe these alleged actions amount

to a violation of the FDCPA. The complaint goes on to allude to an invalid assignment of the mortgage, and the apparent impropriety of Ocwen of having brought a foreclosure action in state court. This allegation is not entirely discernable, nor does it appear to state a FDCPA claim.

In sum, it is not clear from plaintiffs' complaint whether or how defendants allegedly violated the FDCPA. Accordingly, plaintiffs have failed to state a claim under the FDCPA. [4]

Finally, to the extent the complaint contains other state law claims, the Court declines to exercise supplemental jurisdiction over those claims. Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); 28 U.S.C. § 1367(c) (3).

IV. Leave to Amend

**5** Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (quoting Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984)). District courts "should not dismiss [pro se] complaints without first granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).

However, leave to amend may "properly be denied for ... 'futility of amendment.' " Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). This is true even when plaintiff is

proceeding pro se. See Martin v. Dickson, 100 Fed.Appx. 14, 16 (2d Cir. 2004) (summary order).

Here, reading the complaint liberally, the Court does not find any allegations that suggest plaintiffs have a valid claim they have merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the Court finds that repleading would be futile, because the problems with plaintiffs' complaint are substantive, and supplementary and/or improved pleading will not cure its deficiencies. See id.

Accordingly, the Court declines to grant plaintiffs leave to amend their complaint.

CONCLUSION

The motions to dismiss of defendants Ocwen Loan Servicing, LLC and Seneca Mortgage Servicing are GRANTED.

Because the complaint is dismissed in its entirety for failure to state a claim, the complaint is dismissed as to all defendants, including defendant Merscorp Holdings, Inc.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motions (Docs. ##6, 15) and close this case.

SO ORDERED.

All Citations

Slip Copy, 2017 WL 4857598

Footnotes

1    Because plaintiffs are proceeding pro se, they will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

2    Ocwen asserts it is a limited liability company with a principal place of business in Delaware. The Court takes judicial notice, pursuant to Fed. R. Evid. 201, of the public entity information provided by the New York State Department of State, Division of Corporations' corporate and business entity database, which shows that Ocwen Loan Servicing, LLC

2017 WL 4857598

is a foreign limited liability company. See https://appext20.dos.ny.gov/corp_public/corpsearch.entity_search_entry (last visited Oct. 20, 2017).

3    There is no indication on the docket that defendant Merscorp has been served, nor has Merscorp appeared in the case. Nevertheless, plaintiffs have not moved for a default judgment. However, a Court may not sua sponte dismiss a defendant for insufficient service of process unless the plaintiff is first given an opportunity to explain whether the defendant has been served, and if not, whether the plaintiff has good cause for its delay in effecting service. See Dupps v. Betancourt, 952 N.Y.S.2d 585, 587 (2012); Thompson v. Maldonado, 309 F.3d 107 (2d Cir. 2002). Accordingly, the Court does not dismiss Merscorp on Rule 12(b)(5) grounds at this time. However, as explained below, the complaint is dismissed in its entirety under Rule 12(b)(6) for failure to state a claim.

4    The Court notes that plaintiffs' complaint also fails to satisfy Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The statement should be plain "so as to enable [the adverse party] to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). As mentioned, it is very difficult to understand plaintiffs' complaint, which contains little detail regarding the underlying facts giving rise to the claims, or a clear articulation of the specific claims being asserted. As such, it fails to provide defendants with the requisite notice of the claims such that they may defend themselves in this litigation.

---

**End of Document**                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

182 F.3d 898
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. See Federal Rule of Appellate
Procedure 32.1 and this court's local Rule 32.1.1. for
rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Second Circuit.

BALLYHIGHLANDS, LTD., Plaintiff-Appellant,

v.

Albert BRUNS, Mary Bruns, & John
Does # 1-25, Defendants-Appellees.

No. 98-9373.
|
May 28, 1999.

Appeal from the United States District Court for the
Southern District of New York, Barrington D. Parker, Jr.,
*Judge*.

**Attorneys and Law Firms**

Nathan M. Ferst, New York, NY, for Appellant.

John S. Selinger, Levinson, Zeccola, Reineke, Ornstein &
Selinger, P.C., Central Valley, NY, for Appellees Albert
Bruns, Mary Bruns, and John Does 1-25.

Kleinman, Saltzman & Bolnick, LLP, New City, N.Y., for
Appellees Gus Koutsourades, and Vicky Koutsourades.

Before PARKER and SOTOMAYOR, Circuit Judges,
and WEINSTEIN, District Judge. *

**Opinion**

 **\*1** Plaintiff-Appellant Ballyhighlands, Ltd., appeals
from a judgment entered September 21, 1998, in the U.S.
District Court for the Southern District of New York,
dismissing Plaintiff's action for lack of subject-matter
jurisdiction pursuant to the *Rooker-Feldman* doctrine. *See
generally Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44
S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court
of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75
L.Ed.2d 206 (1983).

Plaintiff's complaint alleges that Defendants Albert and
Mary Bruns obtained a default judgment and a judgment

of foreclosure in the New York Supreme Court, Orange
County, against a piece of land then owned by Plaintiff,
by misrepresenting to the court that Plaintiff had been
properly served with notice of the proceedings. Plaintiff's
complaint in the instant case further alleges that the
Bruns then conveyed the property to Defendants John
Does # 1-25. Gus and Vicky Koutsourades, the actual
purchasers of the property, were later substituted for John
Does # 1-25 by stipulation. Plaintiff sought compensatory
damages, declaratory relief regarding the sale to the
Koutsourades, and a judgment to compel the Bruns to
deliver a bargain and sale deed to Plaintiff.

Defendants moved to dismiss the complaint for lack of
jurisdiction and for judgment pursuant to Fed.R.Civ.P.
68. A hearing was held on this motion, at which
time the court raised, *sua sponte,* the issue of whether
federal subject-matter jurisdiction was lacking pursuant to
the *Rooker-Feldman* doctrine. The district court then
dismissed the action on this basis. Because the court relied
on a ground that had not been briefed by the parties,
however, the court invited a motion for reargument if
either party disagreed with the court's legal conclusion.

Plaintiff subsequently moved for reconsideration and for
leave to amend the complaint, in order to turn it into
an action for, among other things, ejectment, injunction
against trespassing, punitive damages and/or removal of
cloud on title. Plaintiff's motions were denied. The district
court then entered an amended judgment dismissing the
complaint as to all Defendants pursuant to *Rooker-
Feldman.*

On appeal, Plaintiff-Appellant argues that *Rooker-
Feldman* was improperly applied because: (1) there was no
hearing prior to the entry of the default judgment in the
New York Supreme Court; (2) the New York Supreme
Court had no jurisdiction; (3) the instant action is a
diversity suit; and (4) the instant complaint is a separate
action for trespass and ejectment, and as such is not a suit
seeking to overturn a state court judgment. Plaintiff cites
*Hermann v. Cabinet Land Co.,* 217 N.Y. 526, 112 N.E.
476 (1915), for the proposition that New York state law
enables Plaintiff to essentially vacate or void the judgment
of foreclosure within the context of an ejectment action.

 **\*2** All of Plaintiff-Appellant's arguments are without
merit. A state court hearing is not required for the *Rooker-
Feldman* doctrine to apply. *See Gentner v. Shulman,* 55

F.3d 87, 89 (2d Cir.1995). Under New York law, a default judgment cannot be entered against a domestic corporation unless the party seeking the judgment provides an affidavit stating that additional service of the summons has been made upon the defendant corporation at its last known address at least twenty days before the entry of the judgment. N.Y. Civ. Prac. L. & R. Rule 3215(g)(4)(i). Once entered, a default judgment is a valid judgment, even if the affidavit contained allegedly false information, unless a party successfully moves to vacate that judgment pursuant to N.Y. Civ. Prac. L. & R. Rules 5015 or 317. *Rooker-Feldman* applies to default judgments just as it does to other types of judgments. *See, e.g., Ackermann v. Doyle,* 43 F.Supp.2d 265, 1999 WL 239085, *7 (E.D.N.Y.).* Therefore, Plaintiff-Appellant's arguments concerning lack of a hearing and lack of jurisdiction are unavailing.

Plaintiff-Appellant's argument that *Rooker-Feldman* does not apply to this suit because it is a diversity suit based on New York state law and a "separate action" for trespass and ejectment against the Koutsourades similarly lacks merit. First, this is not an action for trespass and ejectment; Plaintiff's efforts to amend its complaint were unsuccessful. Second, even if this were an action for trespass and ejectment, it is not one that a federal district court has the subject-matter jurisdiction to entertain. The relief which Plaintiff seeks here necessarily requires setting aside the state court foreclosure judgment, which binds the plaintiff. Regardless of the nature of the cause of action, *Rooker-Feldman* deprives a federal court of jurisdiction to review and alter a state court judgment. Simply stated, any action seeking to overturn a state court judgment, and any action that is "inextricably intertwined" with a state court judgment (which this action is), is barred from being brought in federal district court. *See Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 199-200 (2d Cir.1996). Whether Plaintiff seeks relief under Rule 5015 or under *Hermann,* it must do so in New York state court.

For the reasons set forth above, the judgment of the district court is AFFIRMED.

**All Citations**

182 F.3d 898, 1999 WL 377098 (Table)

Footnotes

\*     The Honorable Jack B. Weinstein, of the United States District Court for the Eastern District of New York, sitting by designation.

2011 WL 1458138
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Clifton Laurell FORD, Plaintiff,

v.

DEPARTMENT OF SOCIAL SERVICES
(DSS), New York State Office of Child Support
Enforcement, Child Support Enforcement
Unit (CSEU), Support Collection Unit
(SCU), and Janice Adel Dye, Defendants.

No. 10 Civ. 3800.
|
March 22, 2011.

**Attorneys and Law Firms**

Marjory Cajoux, Esq., Brooklyn, NY, for Plaintiff.

Michael A. Cardozo, by: David A. Rosinus, Jr., Esq., New York, NY, for Defendant Support Collection Unit (SCU).

Attorney General of the State of New York, by: Elizabeth Cohen, Esq., New York, NY, Attorney for Defendant New York Office of Temporary and Disability Assistance, Division of Child Support Enforcement.

*OPINION*

SWEET, District Judge.

 **\*1** Defendant State of New York Office of Temporary and Disability Assistance, Division of Child Support Enforcement ("OTDA") (collectively, the "Defendants") has moved pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (5) and (6) to dismiss the Complaint of the plaintiff Clifton Laurell Ford ("Ford" or the "Plaintiff") seeking the vacatur of the judgment of the Family Court of the State of New York, County of New York entered on June 22, 1993 (the "Judgment"). Defendant Support Collection Unit of the city of New York ("SCU") has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Based on the conclusions set forth below, the motions are granted, and the Complaint dismissed.

*Prior Proceedings*

Ford filed his Complaint on May 10, 2010 requesting that this Court (1) vacate the Judgment against Ford and in favor of Defendant Janice Adel Dye ("Dye"), and (2) vacate the arrears that Plaintiff owes under that judgment to Dye, in the amount of approximately $400,000.00.

Ford has alleged that he paid at least $129,000.00 owed under the Judgment to Dye, but that Dye did not report these payments to any of the government Defendants. (Compl.¶¶ 12–13.) He has further alleged that, as a result, the government Defendants have "failed to give [him] credit for" certain sums of money. (*Id.* ¶ 13.) [1] In addition, Ford has alleged that the government Defendants have miscalculated the amount of money that he owes to Dye, and that Dye did not report to the government Defendants that the child in question did not need child services after age six. (*Id.* ¶¶ 14, 16.)

Ford has alleged further that, as a result of these circumstances, the government Defendants are "requesting payment in the amount of approximately $400,000 ... which Plaintiff does not owe to the Defendants [sic]." (*Id.* ¶¶ 15, 17.) Ford claims that, because he purportedly owes this money, he has been unable to secure employment, obtain a passport, rent an apartment, or travel, and that his health has been affected by the stress arising out of this situation. (*See id.* ¶¶ 20–23.)

Defendant OTDA filed its motion to dismiss on November 3, 2011, and Defendant SCU moved for judgment on the pleadings on December 14, 2010.

The motions were marked fully submitted on February 9, 2011.

*The Applicable Standard*

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235–36 (1974)).

A facially sufficient complaint may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the asserted basis for jurisdiction is not sufficient. *See TM Patents, L.P. v. Int'l Bus. Machs. Corp.,* 121 F.Supp.2d 349, 367–68 (S.D.N.Y.2000); *Peterson v. Continental Airlines, Inc.,* 970 F.Supp. 246, 249 (S.D.N.Y.1997). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. *See Thomson v. Gaskill,* 315 U.S. 442, 446 (1942); *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996). The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. *See Malik,* 82 F.3d at 562; *Gallo v. United States, Dep't of Treasury, Internal Revenue Serv.,* 950 F.Supp. 1246, 1248 (S.D.N.Y.1997) (citing *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994)).

**\*2** In determining a motion to dismiss a complaint under Rule 12(b)(2) for lack of personal jurisdiction, a federal court must first apply the law of the state where the court sits to determine if personal jurisdiction over a defendant exists. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999). In assessing whether personal jurisdiction is authorized under New York law, the Court looks to whether the defendant is either "present" in New York or has committed acts within the scope of New York's long-arm statute. *See* N.Y. C.P.L.R. §§ 301, 302.

Pursuant to Rule 12(b)(5), "a complaint may be dismissed for insufficient service of process." *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.,* 451 F.Supp.2d 585, 589 (S.D.N.Y.2006) (quoting *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 658 (S.D.N.Y.1997)); *see also Hawthorne v. Citicorp Data Sys., Inc.,* 219 F.R.D. 47, 49 (E.D.N.Y.2003) ("Without proper service a court has no personal jurisdiction over a defendant."). On such jurisdictional matters, the plaintiff bears the burden of proof. *See Commer v. McEntee,* 283 F.Supp.2d 993, 997 (S.D.N.Y.2003) ("Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service.").

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949

(2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555). Plaintiffs must allege sufficient facts to "nudge [ ] their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

The legal standard used to decide a motion for judgment on the pleadings made pursuant to Rule 12(c) is identical to the standard used to decide a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See, e.g., Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) (collecting cases).

### The Due Process Claim Is Dismissed

Although Ford claims to seek vacatur of the Judgment (*see* Compl. ¶¶ 1, 26), the gravamen of his Complaint is that he has paid Dye at least $129,400.00 that Dye did not report to SCU, and that SCU did not credit him with such payment and continues to seek a total of approximately $400,000.00 from him as a result. (*See id.* ¶¶ 13, 15.) He has also alleged that Defendants miscalculated this amount, independently of their failure to credit him for amounts already paid. (*Id.* ¶ 14.) In effect, Ford contends that the Judgment has been satisfied (at least in part), not that it should be vacated, and that, by seeking money from Plaintiff in excess of what he owes, SCU is attempting to deprive him of his property (*i.e.,* his money) without due process of law.

**\*3** However, if the process that a state provides to safeguard a plaintiff's protected interest from "mistaken or unjustified deprivation" is "constitutionally adequate," then the state has not violated that plaintiff's procedural due process rights. *Zinermon v. Burch,* 494 U.S. 113, 125–26 (1990) (internal quotations omitted); *see also Wilbur v. Harris,* 53 F.3d 542, 544–45 (2d Cir.1995) (citing *Zinermon,* 494 U.S. at 125–26). To satisfy the requirements of due process, the state must simply make an adequate procedural remedy available to the plaintiff; the plaintiff need not have availed himself of that remedy. *See, e.g., McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 38–39 & n. 21 (1990) ("The availability of a pre-deprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and [litigants] cannot complain if they fail to avail themselves

of this procedure."); *Adams v. New York State Educ. Dep't,* No. 08 Civ. 5996, 2010 WL 624020, at *31 (S.D.N.Y. Feb. 23, 2010)* ("[I]t matters not whether a plaintiff actually avails himself of the state court post-deprivation process. So long as that process is available, a due process claim must be dismissed." (internal quotations omitted)) (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 881 (2d Cir.1996)).

In New York State, when a support collection unit issues an execution for enforcement of current support or arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and "shall have an opportunity to make a submission in support of the objection within fifteen days from service of a copy" of the execution. *See* N.Y. C.P.L.R. § 5241(a) (8) & (e). The agency must then rule on the objection and "notify the debtor of its determination within 45 days." N.Y. C.P.L.R. § 5241(e). If the agency does not agree with the debtor's objection, the debtor may file an Article 78 proceeding in state court to have the state court review the agency's determination. *See Lombardi v. Suffolk County,* No. 04–1216, 2007 WL 446733, at *6 (E.D.N.Y. Feb. 7, 2007)* (citing *New York State NOW v. Pataki,* 261 F.3d 156, 168–69 (2d Cir.2001)). "The availability of these processes satisfies the dictates of due process." *Id.* (citing *Rivera–Powell v. New York City Bd. of Elections,* 470 F.3d 458, 466–68 (2d Cir.2006)).

Insofar as Ford claims that SCU seeks to recover from him an amount of money in excess of what he owes to Dye, or that SCU has miscalculated the amount owed to Dye, he cannot bring a due process claim to rectify the situation, because state law offered him a constitutionally adequate pre-deprivation remedy. Accordingly, his due process claim is dismissed.

### The Rooker–Feldman Doctrine Bars this Action

Construed liberally, the Complaint also alleges that the Judgment violated Ford's substantive due process rights under the Fourteenth Amendment by depriving him of his rights to money, employment, and travel. (*See* Compl. ¶¶ 1, 15, 21.) Under the *Rooker–Feldman* doctrine, however, this Court does not have subject-matter jurisdiction to review any of Ford's substantive due process claims, because Ford, by his own admission, is asking this Court to review and vacate a state court order. (*See id.* ¶¶ 1, 26.)

**\*4** The *Rooker–Feldman* doctrine deprives federal courts of jurisdiction over lawsuits "that are, in substance, appeals from state-court judgments." *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 84 (2d Cir.2005). "The doctrine derives from the mandate that under statutes governing the federal judiciary, district courts are 'empowered to exercise original, not appellate, jurisdiction.' " *Phillips v. City of New York,* 453 F.Supp.2d 690, 713 (S.D.N.Y.2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus Corp.,* 544 U.S. 280, 283 (2005)). The *Rooker–Feldman* doctrine applies in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil,* 544 U.S. at 284. It arises from "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock,* 422 F.3d at 85.

Since the Supreme Court's decision in *Exxon Mobil,* which examined and clarified the application of the *Rooker–Feldman* doctrine, the Second Circuit has articulated four requirements for the doctrine's application, two substantive and two procedural. "Procedurally, the federal court plaintiff must have lost in state court, and the state court judgment must have been rendered before the district court proceedings commenced. Substantively, the plaintiff must complain of injuries caused by a state court judgment, and the plaintiff must invite district court review and rejection of that state court judgment." *Phillips,* 453 F.Supp.2d at 713; *see Hoblock,* 422 F.3d at 85.

Here, Ford's substantive due process claims fit these four requirements squarely. Regarding *Rooker–Feldman's* procedural requirements, Ford concedes that the Judgment was "entered ... against the Plaintiff and in favor of the Defendant [Janice Adel Dye]." (Compl.¶ 1.) Moreover, the Judgment was rendered in 1993, long before Ford commenced this federal action on May 10, 2010. Thus, the Complaint easily meets the two procedural requirements for application of the *Rooker–Feldman* doctrine.

Ford's substantive due process claims also meet the substantive requirements of the *Rooker–Feldman* doctrine. He asks this Court to vacate not only the Judgment generally, but also, specifically, to

vacate "the arrears in the amount of approximately $400,000." (Compl.¶¶ 1, 26.) Thus, the injuries that arise out of his debt are attributable to the Family Court's judgment against him. Moreover, by requesting that this Court "vacate" the Judgment, Ford seeks review and rejection of that Judgment. As a federal district court of original jurisdiction, this Court may not conduct such a review.

Ford contends that he has exhausted his available remedies in state court by submitting a "motion and [a] letter" in which he "objected to the amount requested by" Defendants. (Pl.Opp.2.) Ford wrote the letter to the New York City Office of Child Support Enforcement, but received no response. (See Cajoux Aff. ¶¶ 10–11.) Ford's motion asked an unspecified court for relief, but the court allegedly "failed to address the issue." (Id. ¶ 12.)

 **\*5** Regardless, Ford fails to state a procedural due process claim as a matter of law. His motion did not fall within the procedure contemplated in N.Y. C.P.L.R. §§ 5241(a)(8) or 5241(e). These provisions contemplate a debtor's making a written objection to the local support collection unit itself, alleging that a "mistake of fact" has been made with respect to child support payments or arrears. Moreover, even if the letter Plaintiff allegedly sent did satisfy the requirements of that procedure, Ford has not satisfied that he filed an Article 78 proceeding, and hence cannot hope to establish a procedural due process claim. See Chase Group Alliance LLC v. City of New York Dep't of Fin., 620 F.3d 146, 153 (2d Cir.2010) ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." (internal quotations omitted)).

Furthermore, even if Ford had properly alleged that he filed and then lost an Article 78 proceeding, that fact would be immaterial. In a due process inquiry, it is simply " 'necessary to ask what process the State provided, and whether it was constitutionally adequate.' " Rivera–Powell, 470 F.3d at 465 (quoting Zinermon, 494 U.S. at 126). As discussed above, the state offered Ford a constitutionally adequate process, and that is where this Court's inquiry ends.

Ford has contended that the process that state law confers on debtors in Plaintiff's situation "is inadequate to satisfy

the requirements of due process under the standard set forth in Spinelli v. City of New York, 579 F.3d 160, 170–75 (2d Cir.2009)." (Pl.Opp.3.) Spinelli 's due process analysis arises out of the three-factor balancing test that the Supreme Court set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), which it used because no court had previously determined whether the post-deprivation remedy that the government provided in that case was adequate. See Spinelli, 579 F.3d at 170, 171–75. Here, by contrast, there is no need for this Court to engage in the Mathews balancing test, because, as noted above, the state process that was available to Ford is constitutionally adequate. See, e.g., Lombardi, 2007 WL 446733, at *6; Rivera–Powell, 470 F.3d at 466–68.

Ford has also contended that this Court has diversity jurisdiction over the subject matter of this lawsuit. However, even when a federal district court would otherwise have subject-matter jurisdiction, the Rooker–Feldman doctrine divests that court of jurisdiction.

Although the Second Circuit does not appear to have addressed this issue directly, other federal courts have held that "Rooker–Feldman ... bars suits even where diversity jurisdiction otherwise exists." Segler v. Felfam Ltd. P'ship, 324 F. App'x 742, 743 (10th Cir.2009) (citing Noel v. Hall, 341 F.3d 1148, 1155 (9th Cir.2003) (Rooker-Feldman applies "even if a federal question is present or if there is diversity of citizenship between the parties"); see also, e.g., Thyne v. GMAC Mortg. Corp., No. 3:09–cv–377, 2010 WL 3075185, at *3 (S.D.Ohio Aug. 4, 2010) ("[D]iversity jurisdiction does not defeat the bar of Rooker–Feldman." ). That this Court might otherwise have diversity jurisdiction over the case does not ameliorate the reasoning or application of the Rooker–Feldman doctrine.

 **\*6** Ford has also suggested that, notwithstanding any other argument in this case, "this Court has the power to vacate a judgment" pursuant to Federal Rule of Civil Procedure 60(b)(6), which permits a district court to "relieve a party ... from a final judgment" for "any ... reason that justifies relief." (See Pl. Opp. 3.) Ford reiterates his request that this Court vacate the arrears arising out of the Judgment, and suggests that the Judgment is causing him "extreme and undue hardship." (Id.; see also Cajoux Aff. ¶¶ 15–16.)

Ford v. Department of Social Services, Not Reported in F.Supp.2d (2011)
Case 1:18-cv-00514-BKS-TWD   Document 16   Filed 10/31/18   Page 24 of 48

2011 WL 1458138

However, Rule 60(b)(6) only " 'allows a district court to vacate its own final judgment.' " *Socialist Republic of Romania v. Wildenstein & Co.,* 147 F.R.D. 62, 65 (S.D.N.Y.1993) (quoting *Harman v. Pauley,* 678 F.2d 479, 481 (4th Cir.1982)); *accord Economist's Advocate, LLC v. Cognitive Arts Corp.,* No. 01 Civ. 9468, 2004 WL 728874, at *11 (S.D.N.Y. Apr. 6, 2004) ("[A] district court has the power to vacate its own judgment." (citing *Fort Knox Music Inc. v. Baptiste,* 257 F.3d 108, 110–11 (2d Cir.2001))). Ford cites no authority for the proposition that Rule 60(b)(6) permits a federal district court to relieve a party from the effects of a state court judgment for "any ... reason that justifies relief." Where, as here, Plaintiff seeks federal district court relief from a state court judgment, Rule 60(b)(6) is entirely inapplicable to his case.

Because the *Rooker–Feldman* doctrine proscribes federal district court review of state court judgments, this Court lacks jurisdiction to hear these claims and, as such, they are dismissed.

### The Action Against OTDA Is Dismissed

Even if Ford had properly asserted a claim under 42 U.S.C. § 1983, he would still have failed to state a claim against OTDA, because the actions on which Ford's claim rests attributable to the local SCU and not to the State. Thus, the Complaint is dismissed as to OTDA, because it does not include any allegations or facts demonstrating a violation of Ford's rights by OTDA. Therefore, pursuant to Rule 12(b)(6), the Complaint fails to state a claim upon which relief can be granted.

Ford alleges that he paid "an amount in excess of $70,000.00 to Dye which she failed to report to OTDA." (Compl.¶¶ 12, 13.) He also alleges that OTDA "fail [ed] to give the Plaintiff credits for the payments which the Plaintiff ha[d] made throughout the years [and] miscalculated the amount of Child Support due by the Plaintiff ." (*Id.* ¶ 14.) However, OTDA is not responsible for the amount of arrearage owed. That responsibility belongs to the New York City Human Resources Administration ("HRA").

HRA maintains a current balance due on the statewide Child Support Management System for all child support debtors with orders entered in New York County. *See*

N.Y. Soc. Serv. L. § 111–h(1). If the child support debtor fails to make the required child support payments, HRA is required to enforce child support arrears. HRA tracks payments and maintains the case accounts, not OTDA. Therefore, Plaintiff's request to have his arrears vacated or corrected does not implicate OTDA's ministerial role in supervising the overall child support program in the State of New York.

**\*7** In addition, OTDA has not been properly served. Under Federal Rule of Civil Procedure 4(j)(2),

> [a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner proscribed by that state's law for serving a summons or like process on such a defendant.

OTDA only became aware of this matter when an attorney with the Albany County Department of Social Services faxed a copy of Plaintiff's Summons and Complaint to Brian Wootan, an attorney for OTDA, on August 20, 2010. (*See* Wootan Aff. ¶ 2.) This does not constitute proper service on OTDA under Rule 4(j)(2) or N.Y. C.P.L.R. § 307. The Complaint is therefore dismissed as against OTDA for lack of personal jurisdiction and insufficient service of process under Rule 12(b)(2) and Rule 12(b)(5). [2]

### Conclusion

Upon the conclusions set forth above, Defendants' motions are granted and the Complaint is dismissed with prejudice and costs.

It is so ordered.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 1458138

Footnotes

2011 WL 1458138

1    When a debtor is in default, Defendant SCU becomes involved in child support payments, and may issue an execution for support enforcement. *See* N.Y. C.P.L.R. § 5241(b).

2    In addition, because Plaintiff filed the Complaint on May 10, 2010 and failed to serve the Complaint on OTDA within 120 days of that date, the Complaint is dismissed as against OTDA. *See* Fed.R.Civ.P. 4(m).

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 1:18-cv-00514-BKS-TWD    Document 16    Filed 10/31/18    Page 26 of 48
Kingston v. Deutsch Bank Nat. Trust Co., Not Reported in F.Supp.2d (2013)

2013 WL 1821107

2013 WL 1821107
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jamaine KINGSTON, Plaintiff,

v.

DEUTSCH BANK NATIONAL TRUST COMPANY
f/k/a Bankers Trust Company of California,
N.A., First United Mortgage Banking Corp.,
America's Servicing Company, Defendants.

No. 12–CV–6257.
|
April 30, 2013.

**Attorneys and Law Firms**

By: Robin L. Muir, Allison J. Schoenthal, Lisa J. Fried,
Hogan Lovells U.S. LLP, New York, NY, for Defendant.

*MEMORANDUM AND ORDER*

JOHN GLEESON, District Judge.

 **\*1** Jamaine Kingston brings a *pro se* civil action pursuant
to 42 U.S.C. § 1983 and § 1985 seeking damages and/
or declaratory and injunctive relief against Deutsch
Bank National Trust Company f/k/a Bankers Trust
Company of California, N.A. ("Deutsch Bank"), First
United Mortgage Banking Corp. ("First United"), and
America's Servicing Company ("ASC"). On January 14,
2013, defendant Wells Fargo Bank, successor by merger
to Wells Fargo Mortgage d/b/a/ America's Servicing
Company, moved to dismiss all claims against it pursuant
to Federal Rules of Civil Procedure 12(b)(1) for lack
of subject matter jurisdiction. In the alternative, ASC
contends that the claims are barred by *res judicata* or
that the complaint fails to state a claim and must be
dismissed with prejudice pursuant to Federal Rule of Civil
Procedure 12(b)(6).

Kingston did not submit an opposition to the present
motion and did not appear for oral argument on either
of two dates scheduled: February 20 and March 27,
2013.[1] For the reasons stated below, defendant's motion
is granted, and all claims are dismissed against ASC with
prejudice.

## BACKGROUND

A. *Parties*
ASC is a "servicing division of Wells Fargo Bank, N.A.
and was the servicer of the mortgage loan at issue in this
case." Def.'s Mem. of Law in Supp. of Mot. to Dismiss
2, Jan. 14, 2013, ECF No. 10. The loan at issue was
part of a mortgage loan trust: Nomura Asset Acceptance
Corporation, Mortgage Pass–Through Certificates, Series
2007–1. *See* Muir Decl. in Supp. of Mot. to Dismiss, Ex.
1, ECF No. 11–1. ASC acts as the servicer of loans in this
trust.

B. *Factual Allegations*
The following facts are drawn from the complaint and
from the judicially-noticed record of related state court
proceedings.[2] On September 20, 2006, in connection
with the purchase of real property located at 720
Marcy Avenue, Brooklyn, N.Y. 11216 (the "property"),
Kingston obtained a mortgage loan in the principal
amount of $796,000.00 from First United Mortgage
Lending Corporation .[3] Note, ECF No 11–2. Kingston
alleges that he was "not employed nor were there income
verifications in order to assure that the loan would be paid
back," and he was issued a "high interest bearing loan."
Compl. ¶ 12, ECF No. 1. He alleges that the defendants[4]
"inflated[ed] the true value of the property ... over 200%,"
*id.* ¶ 46.

On September 13, 2007, First United named Kingston as a
defendant in a foreclosure action brought in the Supreme
Court of the State of New York, Kings County (the "state
court"). In his complaint in this Court, Kingston alleges
that he did not receive proper service of a summons. *Id.*
¶ 14–15. First United moved for default judgment when
no one appeared in the foreclosure action. The state court
entered a judgment of foreclosure and served Kingston
with a Notice of Sale advising him that the property would
be sold at auction. Affirmation in Supp. of Order to Show
Cause ¶¶ 3–4, ECF No 11–7. Kingston alleges that the
state court did not request proof of the note and mortgage
prior to foreclosing, Compl. ¶ 18, and that the state court
entered the foreclosure order even though the "moving
party" did not "legally own the property ... [or] have legal
standing" to foreclose. *Id.* ¶ 47.

Case 1:18-cv-00514-BKS-TWD    Document 16    Filed 10/31/18    Page 27 of 48
Kingston v. Deutsch Bank Nat. Trust Co., Not Reported in F.Supp.2d (2013)

2013 WL 1821107

**\*2** On March 24, 2010, Kingston—though counsel—moved in state court to vacate the judgment of foreclosure and sale and to dismiss the foreclosure action on the ground of lack of standing to foreclose. Order to Show Cause 2–3, ECF No 11–7. In support of the motion, Kingston's counsel filed an affirmation stating: "[a] review of the file in this matter reveals substantial irregularities in the manner in which the Judgment of Foreclosure was obtained" and requesting "that the Judgment be vacated and the action dismissed." *Id.* ¶¶ 6, 11–13, 21–23.

The Honorable Robert J. Miller of the Supreme Court of the State of New York held oral argument on Kingston's order to show cause. On November 5, 2010, Judge Miller denied Kingston's motion and lifted the stay on the sale of the property. Order, ECF No. 11–8. On July 11, 2011 Kingston filed a *pro se* emergency application to show cause why the sale should not be stayed and a Temporary Restraining Order be issued, but the state court again denied his application, noting "[the] defendant's affidavit misstates the absence of a prior application for the same relief." Order, ECF No. 11–9. On December 13, 2012, Kingston attempted to make a second emergency application to vacate the judgment of foreclosure and sale and dismiss the foreclosure action. The state court again refused to sign this order, indicating that it was the third "motion for the same relief .... [Judge Miller] denied the first one on the merits, after oral argument, when [Kingston] had counsel.... That is the law of the case." Order 4, ECF No. 11–10.

A few days later, on December 20, 2012, Kingston commenced this *pro se* action seeking an "order to show cause to dismiss the complaint and cancel[ ] the lis pend[ens] and to discharge the mortgage along with vacating the judgment of foreclosure and sale." Compl. ¶ 2. Specifically, Kingston alleges that he was "pressured to purchase more than five different loans from the same lender despite the fact that [he] had no real income verification," *id.* ¶ 44; the defendants "inflat[ed] the true value of the property;" and the defendants "do [ ] not legally own the property nor do [they] have legal standing to commence such an action." Compl. ¶¶ 44, 46–47. He also alleges that the foreclosure and sale was obtained in violation of plaintiff's constitutional rights and through "predatory lending fraud." *Id.* ¶ 2.

C. *Scope of Dispute*

Since Kingston is a *pro se* litigant, his pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal quotation marks omitted); *accord Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) ("Even after *Twombly,* ... we remain obligated to construe a *pro se* complaint liberally."). His complaint is "construed liberally and interpreted 'to raise the strongest arguments' possible." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (quoting *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006)). Applying this principle, I interpret Kingston's complaint to allege the following causes of actions against this Defendant: (1) violations of the Fifth and Fourteenth Amendments' due process clause; (2) common law fraud; and (3) a challenge to the defendants' lending practices as violative of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 *et seq.* and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*[5]

**\*3** Kingston seeks an injunction preventing sale of the real property and a "declaratory judgment pursuant to § ] 1921 [of the N.Y. Real Property Actions and Proceedings Law] ... [to] declare[ ] the mortgage ... to be predatory lending and to discharge the loans in its totality ..." Compl. ¶ 48. In the alternative, he seeks $1.3 million in damages "for the entire balance of [the] interest in the property including maintenance and restoration and repairs," *id.* ¶ 29. Finally, he seeks a "stay of the proceedings ... because the defendant herein was not present at the premises on the day of service." *Id.* ¶ 13.

DISCUSSION

A. *Federal Due Process Claims*
In the complaint, Kingston brings a claim for due process violations and invokes 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1985 ("Section 1985"). Compl. ¶¶ 1–2. The defendant argues that this Court lacks subject matter jurisdiction over the plaintiff's due process claims pursuant to the *Rooker–Feldman* doctrine. For the reasons that follow, I agree.

1. *Legal Standard*
Subject matter jurisdiction is the legal authority of a court to hear and decide a particular type of case. Federal courts are courts of limited subject matter jurisdiction;

2013 WL 1821107

they may exercise jurisdiction only if it is specifically authorized. "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Sharkey v. Quarantillo,* 541 F.3d 75, 82–83 (2d Cir.2008) (internal quotation marks omitted). A court also has an independent responsibility to *sua sponte* dismiss an action pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure where no subject matter jurisdiction exists.

The *Rooker–Feldman* doctrine provides that United States distrct courts may not sit in direct review of state court decisions unless Congress has specifically authorized such relief. *See Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The Supreme Court has authority to hear appeals of final decisions of state court judgments. The *Rooker–Feldman* doctrine bars a losing party from bringing an appeal of a state court judgment in a United States district court instead of the Supreme Court. [6] A federal district court also lacks jurisdiction over all claims that are "inextricably intertwined" with a prior determination issued by a state court. *Feldman,* 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206. However, a district court retains jurisdiction to hear a case that presents an "independent claim" even if the effect of raising this "independent claim" will challenge or deny some conclusion reached by the state court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283–84, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *see also id.* at 292 ("If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ... then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion') (internal quotation marks and brackets omitted).

**\*4** Four requirements must be met for the *Rooker–Feldman* doctrine to apply: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (internal quotation marks and brackets omitted).

### 2. *Analysis*

Looking to the requirements of *Rooker–Feldman* test outlined by the Second Circuit in *Hoblock,* I find that all four requirements are satisfied with respect to Kingston's due process claims. First, Kingston's complaint alleges that the state court judgment of foreclosure resulted in an unfavorable decision. Second, the last state court action relating to this matter is a New York state court decision on December 12, 2012 denying an emergency stay. Since that decision predates the December 20, 2012, filing of the instant complaint, I conclude that all pertinent state-court decisions were issued before proceedings in this Court were commenced. [7]

The substantive requirements of *Rooker–Feldman* also are met here. Kingston's due process claims—alleging that "process was not served upon" him or any other person, *see* Compl. ¶ 14, and that the bank lacked "legal standing" to foreclose, *id.* ¶ 27, 52—explicitly challenge the validity of the state judgment of foreclosure and ask this Court to engage in an impermissible review of the state court judgment. Kingston's alleged injury—the loss of his home —is caused by a state-court judgment and he invites this Court to reject the state court conclusions. "Courts in this Circuit have consistently held that a plaintiff who lost possession of his home in a state court foreclosure proceeding is barred by the *Rooker–Feldman* doctrine from attacking the state court judgment in federal district court." *See Gray v. Americredit Fin. Servs., Inc.,* No. 07 Civ 4039, 2009 WL 1787710, at \*4 (S.D.N.Y. June 23, 2009) (listing cases). I have no jurisdiction to reverse the state court, as the Supreme Court is the sole court authorized to hear appeals of state court judgments. Accordingly, I conclude that Kingston's due process claims are barred by the *Rooker–Feldman* doctrine. *See Hoblock,* 422 F.3d at 86–87. It follows that his claims for a declaratory judgment and injunctive relief are also barred by *Rooker–Feldman* since both would require this Court to invalidate a state court judgment. [8] Since I conclude that the due process claims are barred by the *Rooker–Feldman* doctrine, I need not—and do not—consider whether the due process claims also are barred under the doctrine of *res judicata.* [9]

### B. *Common Law Fraud and Predatory Lending*

In contrast to his due process claims, Kingston's allegations of "fraud" and "predatory lending" allege

2013 WL 1821107

injuries caused in the *formation* of the underlying mortgage agreement. These allegations originate from actions that *precede* a state cou rt judgment; accordingly, they are not caused by the state court judgment and, thus, are not barred by the *Rooker–Feldman* doctrine. *See McKithen v. Brown,* 481 F.3d 89, 97–98 (2d Cir.2007) ("[A] party is not complaining of an injury caused by a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been caused by those proceedings.") (internal quotation marks omitted); *see also Hinds v. Option One Mortg. Corp.,* 11 Civ 6149, 2012 WL 6827477, *4 (E.D.N.Y., Dec.12, 2012) (finding that the *Rooker–Feldman* doctrine does not divest the court of jurisdiction over claims to compensate for injuries arising from fraud where the alleged injury was caused by a defendants' prior conduct, and not the state court judgment).

**\*5** Although the *Rooker–Feldman* doctrine does not divest the Court of jurisdiction to hear claims alleging fraud and predatory lending in the formation of the mortgage, I conclude that the complaint—even liberally construed to raise its strongest possible claims against ASC—fails to plead a claim for relief against this defendant and, accordingly, is dismissed. [10] Fed.R.Civ.P. 12(b)(6).

### 1. *Legal Standard: Fed.R.Civ.P. 12(b)(6)*

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although courts must give *pro se* pleadings a liberal construction, "the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." *Wynder v. McMahon,* 360 F.3d 73, 79, n. 11 (2d Cir.2004).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To survive dismissal, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### 2. *Analysis*

Kingston alleges that the defendant "participated in a fraud and a scheme to defraud" him. Compl. ¶ 2. To properly plead fraud, the complaint must lay out facts supporting the required elements of the cause of action. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester,* 273 F.3d 153, 156 (2d Cir.2001). A fraud claim also must "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). Generalized fraud allegations are insufficient to state a claim against a defendant. *See Eternity Global Master Fund v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 187 (2d Cir.2004).

The present complaint pleads fraud against all defendants generally, without ascribing specific fraudulent statements or omissions to any particular defendant. The complaint does not mention or allege any facts bearing on the conduct of ASC and does not allege any facts bearing on any actions that ASC undertook (or failed to undertake), much less allege that these acts or omissions were false or misleading. Kingston fails to allege any facts on which a reasonable fact-finder could conclude that *this* particular defendant was involved with the alleged fraud in the formation of the underlying mortgage. Even under the most liberal reading of the complaint, I conclude that Kingston fails to allege facts raising a plausible claim for relief against this defendant. Accordingly, this fraud claim is dismissed for failure to state a claim. Fed.R.Civ.P. 12(b)(6).

**\*6** To the extent that Kingston's allegations against ASC suggest a violation of TILA or HOEPA for predatory lending, I conclude that Kingston has failed to state a claim against this Defendant that is plausible on its face. Under TILA, creditors must meaningfully disclose all credit terms to consumers in order to avoid the uninformed use of credit. *See* 15 U.S.C. § 1601(a). Under HOEPA, creditors must make certain disclosures of financial information in connection with high cost mortgage loans. *See id.* §§ 1602(aa)(1) & 1639 (describing information that must be disclosed to consumers by a creditor, including annual percentage rate and monthly payment); 12 C.F.R. § 226.32(c)

("Section 32" of Regulation Z of the Truth in Lending Regulations) (same). Even assuming ASC is a "creditor" under 15 U.S.C. § 1602 and Regulation Z, Kingston has made no allegation that it failed to comply with the statute's disclosure requirements, nor can his complaint be reasonably construed to make such an allegation. Accordingly, these federal claims are dismissed as well.

Generally, I would grant leave to amend the complaint to afford a *pro se* plaintiff a chance to remedy its deficiencies. But here I conclude that even a liberal reading of the complaint fails to give any indication that a valid claim might be stated against ASC. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see also* Fed.R.Civ.P. 15(a) (The court should freely give leave [to amend the pleadings] when justice so requires."). Since I conclude that any attempt to re-plead would be futile, [11] plaintiff's

fraud and predatory lending claims against ASC are dismissed with prejudice.

### C. *Conclusion*

Kingston has failed to respond to the motion and failed to show up in court when the motion was heard. The motion is therefore granted as unopposed. Also, for the reasons set forth above, I conclude that the motion by ASC has merit, and, on that independent basis, the motion to dismiss is granted in its entirety and the case against ASC is dismissed with prejudice.

So ordered.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 1821107

### Footnotes

1    Kingston contacted counsel for ASC by telephone on February 19, 2013 seeking additional time to oppose the motion. *See* Letter Mot. for Extension of Time, Feb. 21, 2013, ECF No. 15. Kingston subsequently sought an extension from this Court. Letter Mot. for Extension of Time, ECF No. 16. I granted Kingston's untimely motion for an extension and set a new briefing schedule and oral argument date. Kingston did not submit opposition papers and failed to appear at the rescheduled oral argument date on March 27, 2013.

2    On a motion to dismiss, a court may consider documents attached to, or incorporated by reference in the complaint, and matters of which judicial notice may be taken. *See Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Pursuant to this principle, in deciding this motion, I have considered the complaint and state foreclosure documents that are matters of public record and incorporated by reference in the complaint. *See Taylor v. Vt. Dep't. of Educ.,* 313 F.3d 768, 776 (2d Cir.2002).

3    A mortgage is "[a] lien against property that is granted to secure an obligation (such as a debt) and that is extinguished upon payment or performance according to stipulated terms." Black's Law Dictionary 1101 (9th ed.2009). If the debtor defaults on repayment of the debt, the creditor can use its rights in the debtor's property to fulfill the debtor's obligation. The process by which the creditor does this is foreclosure.

4    In his complaint, Kingston alleges that "the *plaintiff* had abused its position in order to inflate the true value of the property ..." Compl. ¶ 46 (emphasis added). Construing the complaint liberally in light of the plaintiff's *pro se* status, I conclude that Kingston means to make allegations against the *defendants.* The mistake no doubt originated in the fact that the complaint in this case appears to be a copy of Kingston's response to the foreclosure proceeding in state court, which refers to Kingston (the plaintiff in this action) as the defendant.

5    In 1994, Congress amended TILA by adding the Home Ownership and Equity Protection Act (HOEPA) to address the targeting of persons for "credit on unfair terms" based on income, race or ethnicity. S.Rep. No. 103–16, at 21 (1993).

6    The plaintiffs in *Rooker* brought a claim in a U.S. district asking the court to declare as null and void the judgment of an Indiana court, which had been affirmed by the state's supreme court. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The plaintiffs in *Rooker* alleged that the state court decision violated the Contracts Clause, due process, and equal protection in that it gave effect to a supposedly unconstitutional state statute. *Id.* at 415. The district court dismissed the case, finding it not to be within its jurisdiction as defined by Congress. The Supreme Court agreed, holding that an action in federal district court is not the "appropriate appellate proceeding" in which to correct a state court error. *Id.* at 415–16.

7    Kingston has not alleged, and there is nothing in the record to show, that Kingston appealed the state court judgment. A judgment becomes final when the state court ruling carries preclusive effect. *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,* 410 F.3d 17, 24 & n. 10 (1st Cir.2005). Therefore, the state court

Case 1:18-cv-00514-BKS-TWD   Document 16   Filed 10/31/18   Page 31 of 48
Kingston v. Deutsch Bank Nat. Trust Co., Not Reported in F.Supp.2d (2013)

2013 WL 1821107

proceeding ended for *Rooker–Feldman* purposes when plaintiff allowed the time for appeal to lapse without filing an appeal in state court.

8   Kingston brought his due process claims under 42 U.S.C. § 1983, a statute that authorizes private persons to enforce their federal constitutional rights against defendants who act under the color of state law. His claims fail for the additional reason that Kingston fails to allege any facts that plausibly suggest that this defendant is a state actor or "a willful participant in joint activity with the State or its agents." *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992). Kingston also purports to bring this action under 42 U.S.C. § 1985, but he fails to state a claim under this statute either. To state a claim under 42 U.S.C. § 1985, a plaintiff must demonstrate a: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). "[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* at 1088 (internal quotation marks omitted). Even construing the complaint liberally, Kingston does not allege that any wrongdoing by the defendant was motivated by race or class. Accordingly, Kingston has not stated a claim under § 1985.

9   Under the doctrine of *res judicata,* " 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Monahan v. New York City Dep't. of Corr.,* 214 F.3d 275, 284 (2d Cir.2000) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). *Res judicata* applies where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* at 285 (citation omitted).

10  Because I conclude that dismissal is appropriate under Rule 12(b)(6), I decline to consider whether *res judicata* is an independent basis on which to dismiss the fraud and predatory lending claims against this defendant.

11  The statute of limitations governing an action for damages under TILA is one year. 15 U.S.C. § 1640(e). Because I dismiss the claim for failure to state a claim, I do not consider whether these claims would also be time barred.

---

**End of Document**                                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   6

2012 WL 1530731
Only the Westlaw citation is currently available.
NOT FOR ELECTRONIC OR PRINT PUBLICATION
United States District Court,
E.D. New York.

Stefan PAPESKOV, Plaintiff,
v.
Georgia NITIS; Angiolina Lattanzio; Anna
Soave; Kathyryne Danyluk; John Danyluk;
Brandimarte Luigi; Doe–1, Doe–2, et al.; The
City of New York, Dept. of Housing Preservation
and Development; Michael Cardozo, Corporation
Counsel; Vivia Joseph, Guardian Ad Litem; Gilbert
Badillo, Queens Co. Civil Ct. Judge, Defendants.

No. 12–CV–1740 (ARR).
|
April 27, 2012.

**Attorneys and Law Firms**

Stefan Papeskov, pro se.

*MEMORANDUM & ORDER*

ROSS, District Judge.

**\*1** Stefan Papeskov ("plaintiff"), appearing *pro se,* filed the above-captioned complaint on April 5, 2012. Plaintiff's request to proceed *in forma pauperis* is granted for the purpose of this Order. For the reasons set forth below, the action is dismissed.

**BACKGROUND**

It is difficult to determine the nature of plaintiff's claims and the relief that he seeks. The Statement of Claim begins with a nonsensical statement that references Bulgaria, the Pope, and defendant Michael Cardozo, Corporation Counsel for the City of New York. Compl. at 2. A subsection entitled "Facts of Instant Merits" includes specific allegations related to plaintiff's former apartment at 25–09 75th Street in East Elmhurst, New York. Plaintiff alleges that, in 2009 and 2010, he was subjected to poor living conditions, including the presence of flooding,

mold, and toxic dust caused by repairs made by unlicensed asbestos demolitionists. Compl. ¶¶ 3, 8. Plaintiff alleges that his landlords, defendants Kathyryne and John Danyluk, and their counsel, defendant Brandimarte Luigi, pursued two holdover eviction proceedings against him. Compl. ¶¶ 5–6. He states that the first was withdrawn after he presented evidence of rent checks submitted by another party. Compl. ¶ 5. In a second proceeding in Queens Civil Court, Docket No. L & T 61674/2010, plaintiff was appointed a guardian *ad litem,* defendant Vivia Joseph. Compl. ¶¶ 7, 10. Plaintiff asserts that defendant Cardozo conspired with Joseph and the presiding judge, defendant Gilbert Badillo, "to lynch [his] rights in a blitz." Compl. ¶ 7.

Plaintiff attaches a transcript from a hearing in L & T 61674/2010 held on August 20, 2010, before Judge Badillo. Compl. ¶ 7; Ex. 11 (transcript of proceedings). At the hearing, defendant John Danyluk testified that plaintiff and two other tenants occupied the dwelling under an unwritten month-to-month lease and that the tenants had not paid any rent from January 2010 until the date of the hearing. Ex. 11 at 9–10. Danyluk testified that he terminated the tenancy on April 30, 2010, but that the tenants had refused to vacate the premises. *Id.* at 10–11. Plaintiff also testified at the hearing. He testified about conditions in the apartment, including work done by unlicensed contractors. *Id.* at 21–32. He acknowledged that he had not paid any rent since December 2009. *Id.* at 36. He denied that defendant Danyluk had served him with a notice of termination or sent anyone to fix the conditions in the apartment. *Id.* at 37, 41.

Plaintiff did not submit a copy of the judgment in L & T 61674/2010 but referenced it in an Affidavit he submitted in support of a motion seeking post-judgment relief. Ex. 12b (Papeskov Affidavit) ¶ 4. Plaintiff affirmed that Judge Badillo issued a decision on August 24, 2010, in which he awarded possession to the landlord and directed plaintiff to pay $7200 in overdue rent and use and occupancy fees. *Id.* ¶¶ 4, 8; Compl. ¶ 11. Plaintiff states that a Notice of Eviction was issued on September 30, 2010 and executed by the Marshal on October 7, 2010. Compl. ¶¶ 13, 16. Plaintiff states that, after the eviction, he departed for Bulgaria. Compl. ¶ 17.

**\*2** Plaintiff asserts the court's federal question jurisdiction on the basis of the Civil Rights Act, 42 U.S.C. § 1983, and related criminal statutes, 18 U.S.C.

§ 241 and § 242. Compl. ¶ 1. He also asserts diversity jurisdiction. Compl. ¶ 2. He states that he resides in Bulgaria; all of the defendants are located in New York. He seeks $90,000 in unspecified damages from some of the defendants and "reinstatement of tenancy in properly repaired apartment." Compl. at IV.

## DISCUSSION

### I. *Standard of Review*

The Court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted). Furthermore, the pleadings must be read liberally and interpreted as raising the strongest arguments they suggest. *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). "[T]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 46 (2d Cir.1997) (internal quotation marks and citation omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (internal quotation marks omitted).

However, a district court must dismiss a case if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Moreover, a plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action. If the Court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3); *accord Yong Qin Luo v. Mikel,* 625 F.3d 772, 775 (2d Cir.2010). Federal subject matter jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiffs and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332.

### II. *Lack of Subject–Matter Jurisdiction*

Plaintiff's complaint does not assert a valid basis for this Court's jurisdiction over his claims. "Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." *New York v. White,* 528 F.2d 336, 338 (2d Cir.1975). The federal statutes cited by plaintiff do not provide any basis for relief. To bring a claim for civil rights violations under 42 U.S.C. § 1983 (" § 1983"), a plaintiff must allege that the challenged act or omission be committed by a person "acting under color of state law." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994). As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). Most of the named defendants are private individuals, and plaintiff has not alleged that these defendants acted under color of state law. Although plaintiff also names, as defendants, a New York City agency and a supervisory official, he fails to specify any constitutional harm attributable to the Department of Housing Preservation and Development or Corporation Counsel Michael Cardozo. The only allegation against Corporation Counsel is plaintiff's unsupported claim that defendant Cardozo instructed defendant Joseph to "lynch [plaintiff's] rights in a blitz." Compl. ¶ 7. As such, plaintiff has failed to state a claim that would be cognizable under § 1983. Nor has he alleged that any party has violated the criminal statutes he cites, 18 U.S.C. § 241 and § 242, or that any private cause of action could arise therefrom. *See Storm–Eggink v. Gottfried,* 409 Fed. Appx. 426, 427 (2d Cir.2011) ("[W]e have held that there is no private right of action under § 242, while nothing in the language or structure of § 241 suggests that Congress intended to create a private right of action under that section." (internal citations omitted)).

**\*3** The court has considered whether the facts presented implicate any other federal question and finds that they do not. Plaintiff's claims involve a landlord-tenant matter and state court proceedings. "[F]ederal courts do not have federal question subject matter jurisdiction over state residential landlord-tenant matters." *Galland v. Margules,* No. 05 Civ. 5639, 2005 U.S. Dist. LEXIS 17125, at \*4 (S.D.N.Y. Aug. 17, 2005). Accordingly, plaintiff cannot

Papeskov v. Nitts, Not Reported in F.Supp.2d (2012)

2012 WL 1530731

raise landlord-tenant concerns or challenge the holdover eviction proceeding in federal court.

Plaintiff also alleges diversity jurisdiction, premised on his current residence in Bulgaria and an alleged amount in controversy exceeding $75,000. Plaintiff states that he lived in the same New York apartment for nine years, has applied for public housing with the New York City Housing Authority, and seeks to reinstate his tenancy in the apartment at 25–09 75th Street in East Elmhurst. Compl. ¶¶ 17, IV. However, plaintiff provides an address in Velikotarnovsko, Bulgaria and states that he moved there after being evicted. Compl. ¶ 17. The Court need not determine whether plaintiff is actually domiciled in Bulgaria for purposes of diversity jurisdiction because he has failed to demonstrate that he meets the jurisdictional amount. "[A] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co. of Chicago,* 93 F.3d 1064, 1070 (2d Cir.1996) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir.1994)). Although plaintiff demands $90,000 in damages from several of the defendants, he has not specified what these damages are for, nor alleged any actual losses, other than the right to occupy an apartment for which he had stopped paying rent. Accordingly, the Court is not satisfied that it is reasonably probable that he can recover more than $75,000 in this action. Although the Second Circuit has cautioned that courts should afford a plaintiff the opportunity to show good faith in believing that a recovery in excess of the jurisdictional amount is possible, *id.,* the court need not finally determine whether plaintiff has established diversity jurisdiction in this instance, as plaintiff's claims are barred by the *Rooker–Feldman* doctrine.

III. *Rooker–Feldman Doctrine*
Plaintiff's claim that he is entitled to occupy the apartment and his allegations about living conditions in the apartment have been litigated in state court, wherein a judge of the Queens County Court issued an order of eviction and a money judgment against plaintiff. Accordingly, his attack on the results of that case is barred by the *Rooker–Feldman* doctrine, which prohibits state-court litigants from inviting federal courts to review and reverse unfavorable state-court judgments. *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482–

84 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

*4 The *Rooker–Feldman* doctrine prevents federal district courts from reviewing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). In *Hoblock v. Albany County Board of Elections,* 422 F.3d 77 (2d Cir.2005), the Second Circuit clarified the four requirements for application of the *Rooker–Feldman* doctrine: (1) the federal-court plaintiff must have lost in state court; (2) plaintiff must complain of injuries caused by a state-court judgment; (3) plaintiff must invite district court review and rejection of that judgment; and the state-court judgment must have been rendered before the district court proceedings commenced. *Id.* at 85. Each of these conditions is met in this case. Plaintiff lost in state court and was served with a notice of eviction and ordered to pay a judgment of $7200. Plaintiff's injuries, the loss of occupancy in the apartment and the money damages were caused by the state-court judgment. Plaintiff's requested relief, as far as can be determined, is reinstatement of his rights in the apartment and money damages to compensate him for the loss of occupancy. These losses were caused by the state court's judgment, and plaintiff seeks to have that judgment overturned. Moreover, according to plaintiff, the state-court judgment was rendered on August 24, 2010, long before he filed this case. For these reasons, the *Rooker–Feldman* doctrine applies, and this Court lacks jurisdiction.

CONCLUSION

For the reasons set forth above, the complaint is dismissed for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**Papeskov v. Nitts, Not Reported in F.Supp.2d (2012)**

2012 WL 1530731

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1530731

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

2018 WL 4185705
Only the Westlaw citation is currently available.
For Online Publication Only
United States District Court, E.D. New York.

Nicholas TALLEY, Donna Evans Talley, Plaintiffs,
v.
LOANCARE SERVICING, DIV. OF
FNF, Selene Finance, Defendants.

15-CV-5017 (JMA) (AKT)
|
Signed 08/31/2018

**Attorneys and Law Firms**

Donna Evans Talley, Nicholas Talley, pro se.

Stuart L. Kossar, Esq., Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523, Attorney for Defendant Selene Finance, LP.

Edward Rugino, Rosicki, Rosicki and Associates, P.C., 51 East Bethpage Road, Plainview, New York 11803, Attorney for Defendant LoanCare Servicing.

**MEMORANDUM AND ORDER**

Joan M. Azrack, United States District Judge

**\*1** On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl. at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the prayer for

injunctive relief in plaintiffs' amended complaint and denied plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

**I. BACKGROUND**

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court can also consider exhibits—such as copies of the mortgage and mortgage assignments—which are attached or integral to the amended complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

**A. The Bay Shore Mortgage**
On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (Id. at 5.) Plaintiffs further allege that Lend America became defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (Id.) By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012. (Id. at 5, 8-12.) The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (Id. at 5.) On March 31, 2015, LoanCare assigned the mortgage to defendant Selene. (Id. at 24-25.)

**B. The Foreclosure Proceeding**
**\*2** Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and each month thereafter. (Kossar Decl. Ex. J,

ECF No. 42-11 at 3.) As a result, LoanCare commenced an action against plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012. (Id.) In the Talleys' verified joint answer, they admitted their default in payments but requested a judicially mandated loan modification. (Id. at 8.) The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action. (Id.) The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law. (Id. at 3.) LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief. (Id.) The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing. (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the RPAPL § 1303 and § 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine

of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior). The court also noted that the Talleys "failed to demonstrate that they made a reasonable attempt to discover the facts which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

## C. The Instant Action

Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under: (1) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350 [1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud. [2] (Amend. Compl.) Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable. [3] (See Am. Compl.)

**\*3** Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage. (Id. at 3.) Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009 through 2012. (Id.) Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.) Plaintiffs appear to allege that "no

delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.) Plaintiffs further allege that defendants have no standing under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs. (Id. at 5-6.) Finally, plaintiffs allege that "even if this was a legal foreclosure, we were not given our due process because we were not notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'." [4] (Id. at 6.) Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014. [5] (Id.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] $4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009 to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment." (Id. at 4.)

Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted. [6]

## II. DISCUSSION

### A. Standard of review

The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky, 777 F.

Supp. 2d at 703 (internal quotation marks and citations omitted).

### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

### 2. Fed. R. Civ. P. 12(b)(6)

**\*4** To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski v. Mangia 57, Inc., No.

09–CV–4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata* ).

## B. *Rooker-Feldman* Doctrine

Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction to hear claims which are "inextricably intertwined" with prior state court determinations). The *Rooker-Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.' " Alston v. Sebelius, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), adopted by, 2014 U.S. Dist. LEXIS 122970, 2014 WL 4374644 (E.D.N.Y. Sept. 2, 2014) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." Park v. City of N.Y., No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. Id.

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any

attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." Ashby v. Polinsky, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009); see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09–CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011). This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); Parra v. Greenpoint Mortgage Co., No. Civ.A. 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

**\*5** In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since those judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of the validity of the mortgage documents that formed the basis

for that judgement. (Am. Compl. at 4-6.) See Trakansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–Civ–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of Rooker-Feldman met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (See Am. Compl.) However, as plaintiffs admit, the state court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, inter alia, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious ...").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender the lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what Rooker-Feldman forbids—to overturn the New York Supreme Court judgment of foreclosure. See Trakansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order].") A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, ... which is precisely the result that the Rooker–Feldman doctrine seeks to avoid." Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of Rooker-Feldman by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails. Plaintiffs' claim of "newly discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of Rooker-Feldman. [7] (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the mortgage[ ] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to Rooker-Feldman because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano v. U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under Rooker-Feldman and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and quotations omitted) ). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the Rooker–Feldman doctrine fails.

**\*6** Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

### C. Res judicata

Alternatively, to the extent the Rooker-Feldman doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of res judicata. Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties

or their privies from re-litigating issues that were or could have been raised in that action." Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quotation omitted). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at 657 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have been, raised in the previous action. Swiatkowski, 745 F. Supp. 2d at 171 (quoting Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005) ). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata*. Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata*. First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment

and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County Supreme Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl. Exs. I, J) and therefore cannot be relitigated in this Court. See, e.g., Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim ... [since the plaintiff's claims] arise from the same factual grouping —namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"); Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); Swiatkowski, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings."); Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by certain courts as immune from *res judicata*."); Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... *res judicata*

... applies to defenses that could have been litigated, including defenses to a foreclosure.").

 **\*7** Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure judgment due to lack of standing based on fraud or "fraud in the inducement". (See Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶¶ 3, 8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at \*7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff could have asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata*). [8]

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131,

2014 WL 6804109, at \*4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted) ). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.' " Modular Devices, Inc. v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at \*4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) ). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015—after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in the foreclosure litigation); Hinds, 2012 WL 6827477, at \*4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest). Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

### D. Collateral Estoppel

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Whether relitigation of an issue is precluded is determined by the rules of the court that

rendered the prior judgment. Id. "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) ). Thus, "[b]efore collateral estoppel can be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." Yeiser, 535 F. Supp. 2d at 424 (internal citation omitted).

**\*8** "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." Id. at 424-25 (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005) ) "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action. And, those issues were decided in LoanCare's favor. As discussed *supra*, plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property. No appeal was filed in that action. Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court. See Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel

precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also Fiequiere v. Tribeca Lending, No. 14-CV-812, 2016 WL 1057000, at *9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel. [9]

### E. Sanctions
Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action. (Def. LoanCare's Mot. to Dismiss, ECF No. 39-7 at 19-20.) For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion. Rule 11 requires that a motion for sanctions "be made separately from any other motion and ... describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). In any event, the Court denies LoanCare's motion for sanctions. Plaintiffs' claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se*. Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia*, whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

### F. Leave to Amend
**\*9** *Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183

(2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." Boddie v. N.Y. State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009).

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman, res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 4185705

---

Footnotes

1   Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error. (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

2   Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss. (*See* Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.) A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013). In any event, plaintiff's conclusory assertions of harassment are insufficient to state any plausible claims.

3   The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

4   To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

5   According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015. (See Am. Compl. at 23-24.) However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014. (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

6   Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

7   Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009. (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent. (Id.)

8   "Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit an attack on a judgment" previously issued by the state court. Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

9   Because plaintiffs' claims fail under *Rooker-Feldman, res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

---

   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 7159796
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Laila WIDAD, Plaintiff,
v.
BROOKLYN PUBLIC LIBRARY
and Jane Doe, Defendants.

No. 15–CV–4312 (MKB).
|
Signed Nov. 13, 2015.

**Attorneys and Law Firms**

Laila Widad, Brooklyn, NY, pro se.

### MEMORANDUM & ORDER

MARGO K. BRODIE, District Judge.

**\*1** On July 22, 2015, Laila Widad, proceeding *pro se,* commenced this action against the Brooklyn Public Library ("BPL") and Jane Doe, an unnamed BPL employee, for damages arising from a physical altercation involving Plaintiff and Jane Doe. The Court grants Plaintiff's request to proceed *in forma pauperis* solely for the purpose of this Order and dismisses the Complaint. Plaintiff is granted thirty (30) days from the date of this Memorandum and Order to file an amended complaint.

### I. Background

On or about July 14,[1] while visiting the BPL branch located at Mother Gaston Boulevard in Brooklyn, New York, Plaintiff informed the library's front desk that the women's restroom had no toilet paper. (Compl.1.) At Plaintiff's request, a BPL employee at the front desk provided Plaintiff with paper towels. (*Id.*) As Plaintiff returned to the restroom, she overheard Jane Doe exclaim, "She's so rude, you should've given her nothing." (*Id.*) Soon thereafter, Plaintiff returned to the front desk to request additional paper towels and ask for Jane Doe's name. (*Id.*) Jane Doe refused to provide her name. (*Id.*) At that time, although Plaintiff and Jane Doe were physically separated by a "laptop cart," Jane Doe told Plaintiff to "get out of her face," and stated, "You need to stop

making yourself look like a fool." (*Id* .) Thereafter, Jane Doe began pushing the laptop cart towards Plaintiff. (*Id.*) Plaintiff tried to push the cart back towards Jane Doe, but Jane Doe continued pushing the cart "so hard" towards Plaintiff. (Compl.2.) At some point, the incident ended and Plaintiff returned to the restroom. (*Id.*)

Eventually, Plaintiff spoke to a BPL manager who told Plaintiff that according to a witness, Plaintiff "got into [Jane Doe's] face." (*Id.*) Plaintiff asserts that someone "made this 'witness' up," and, at the time, Plaintiff tried to show the manager that she and Jane Doe had been separated by the laptop cart and, therefore, "it would be impossible for [Plaintiff] to be 'in her face.' " (*Id.*) As Plaintiff demonstrated this for the manager, Jane Doe began attacking Plaintiff again, and "started to hit [Plaintiff] with the laptop table again." (*Id.*) Plaintiff asserts that the "last time [Jane Doe] pushed the lap[top] table at [Plaintiff] ... [Jane Doe] got up," which then caused Plaintiff to get "so angry, that [she] walked up to [Jane Doe] to yell at her...." (*Id.*) Thereafter, Jane Doe continued attacking Plaintiff, pulling her hair and injuring her head. (*Id.*) According to Plaintiff, she spoke with the police, but they refused to do anything because they believed Plaintiff was involved in a fight. (*Id.*) In light of these events, Plaintiff seeks damages in the amount of three million dollars. (*Id.*)

### II. Discussion

#### a. Standard of review
A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.,* 631 F.3d 57, 63 (2d Cir.2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104–105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see Harris v.*

*Mills,* 572 F.3d 66, 72 (2d Cir.2009) (noting that even after *Twombly,* the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). Additionally, if the Court "determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action." Fed.R.Civ.P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À .R.L.,* 790 F.3d 411 (2d Cir.2015) (A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it ...." (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000))).

**b. The court lacks subject matter jurisdiction over Plaintiff's state law claims**

**\*2** Plaintiff appears to attempt to allege common law claims for assault, battery or another intentional tort. However, the Complaint fails to plead the Court's subject matter jurisdiction over such claims.

Federal-question jurisdiction gives federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Bounds v. Pine Belt Mental Health Care Res.,* 593 F.3d 209, 215 (2d Cir.2010) (quoting 28 U.S.C. § 1331). Additionally, courts may exercise jurisdiction over state law claims where plaintiff and defendant are of diverse citizenship, and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC,* 692 F.3d 42, 48 (2d Cir.2012) (Diversity jurisdiction exists "between, *inter alia,* 'citizens of a State and citizens or subjects of a foreign state.' " (quoting 28 U.S.C. § 1332(a))). However, before the Court may exercise subject matter jurisdiction, there must be complete diversity of citizenship between all plaintiffs and all defendants. *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.,* 772 F.3d 111, 117–18 (2d Cir.), *as amended,* (Nov. 12, 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants."); *Lovejoy v. Watson,* 475 F. App'x 792, 792 (2d Cir.2012) ("The

complaint alleged that Lovejoy and the defendant resided in New York, thereby precluding diversity jurisdiction."). For purposes of diversity of citizenship, a corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1); *see also Bayerische Landesbank,* 692 F.3d at 48.

Here, to the extent Plaintiff seeks to bring state law claims against the BPL and Jane Doe, the Court lacks diversity jurisdiction over such claims as the parties are not diverse. The BPL is a corporation chartered by the New York State legislature and operating exclusively in New York State. *See* BPL, Articles of Incorporation, *available at* http://www.bklynlibrary.org/sites/ default/files/files/ pdf/trustees/Articles-of-Incorporation.pdf; *Brooklyn Pub. Library v. City of New York,* 250 N.Y. 495, 497–501, 166 N.E. 179 (1929) (detailing the founding and history of the BPL). [2] As a result, the BPL is a citizen of New York. According to the Complaint, Plaintiff is also a citizen of New York. (Compl.1.) Although Plaintiff does not allege Jane Doe's citizenship, even if she was not a citizen of New York, the lack of complete diversity between Plaintiff and the BPL destroys any basis for the Court to exercise diversity jurisdiction over Plaintiff's claims as currently pleaded. *See Pa. Pub. Sch. Emps.' Ret. Sys.,* 772 F.3d at 117–18. Accordingly, Plaintiff's state law claims are dismissed. [3]

**c. Plaintiff has failed to state a federal claim pursuant to 42 U.S.C. § 1983**

**\*3** Liberally construing the Complaint, Plaintiff attempts to allege a federal claim under 42 U.S.C. § 1983. Although the Court has subject matter jurisdiction over claims brought pursuant to section 1983, Plaintiff's allegations in the Complaint fail to state a section 1983 claim.

A claim for relief pursuant to 42 U.S.C. § 1983 must allege facts showing that the challenged conduct was "committed by a person acting under color of state law." 42 U.S.C. § 1983. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.' " *Hooda v. Brookhaven Nat. Lab.,* 659 F.Supp.2d 382, 393 (E.D.N.Y.2009) (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 837, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach

merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks and citation omitted); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n,* 396 F.3d 178, 186 (2d Cir.2005) (internal quotation marks omitted) (quoting *United States v. Int'l. Bhd. of Teamsters,* 941 F.2d 1292, 1295 (2d Cir.1991)).

The conduct of a nominally private entity may be attributed to the state, satisfying the state action requirement, if:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (alterations in original) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)); *see Sykes v. Bank of Am.,* 723 F.3d 399, 406 (2d Cir.2013) ("The question is whether the private actor's conduct has sufficiently received the imprimatur of the State so as to render it an action of the State for purposes of § 1983." (citation and internal quotation marks omitted)). Each of the three avenues requires a fact-specific inquiry into the challenged conduct, and in order to find state action, a court must determine that the specific actions of which a plaintiff complains can be fairly deemed that of the state. *See Grogan v. Blooming Grove Volunteer Ambulance Corps,* 768 F.3d 259, 265 (2d Cir.2014) (citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 159, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)) (examining public function test, noting that the function performed by the private entity must have historically been "an exclusive prerogative" of the state); *Cooper v. U.S. Postal Serv.,* 577 F.3d 479, 491–92 (2d Cir.2009) (examining joint action test, noting that state action cannot be premised solely on subjection to state regulation, funding, licensing or

even state creation); *Lynch v. Southampton Animal Shelter Found. Inc.,* 971 F.Supp.2d 340, 349–50 (E.D.N.Y.2013) (examining compulsion test).

**\*4** Plaintiff has not alleged any facts from which the Court could infer that the BPL is a state actor under any of these tests. Moreover, several courts in this Circuit had found that the BPL and other public libraries are not state actors for purposes of section 1983 liability. *See Neptune v. Brooklyn Pub. Library,* No. 12–CV–5948, 2012 WL 6094140, at \*2 (E.D.N.Y. Dec. 7, 2012) ("[T]he Brooklyn Public Library does not act under color of state law." (citing *Breytman v. N.Y. Pub. Library,* No. 05–CV–10453, 2007 WL 541693, at \*2 (S.D.N.Y. Feb.21, 2007))); *Breytman,* 2007 WL 541693, at \*2 ("[T]he New York City Library is not a governmental institution." (citations omitted); *Gilliard v. N.Y. Pub. Library Sys.,* 597 F.Supp. 1069, 1074–75 (S.D.N.Y.1984) ("[Plaintiff's] bare assertion that the Library is a 'quasi-governmental entity' is not enough to overcome a judicial determination of the Library's independence from the State." (citing *N.Y. Pub. Library v. PERB,* 45 A.D.2d 271, 357 N.Y.S.2d 522, 525 (App.Div.1974), *aff'd,* 37 N.Y.2d 752, 374 N.Y.S.2d 625, 337 N.E.2d 136 (1975))).

Here, because Plaintiff fails to allege that the BPL or Jane Doe were state actors, Plaintiff fails to state a section 1983 claim against the BPL and Jane Doe. Accordingly, to the extent Plaintiff attempts to bring a section 1983 claim against Defendants, it is dismissed.

### d. Leave to amend

Mindful of Plaintiff's *pro se* status, the Court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to amend her Complaint to allege either this Court's subject matter jurisdiction over her common law claims or to state a plausible claim pursuant to 42 U.S.C. § 1983.

### III. Conclusion

For the reasons stated above, the Complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff is granted thirty (30) days from the date of this Memorandum and Order to re-plead her Complaint as specified above. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied

Widad v. Brooklyn Public Library, Not Reported in F.Supp.3d (2015)
Case 1:18-cv-00514-BKS-TWD    Document 16    Filed 10/31/18    Page 48 of 48

2015 WL 7159796

for purpose of an appeal. *Coppedge v. United States,* 369
U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED:

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 7159796

Footnotes

1    Plaintiff does not specify the year she visited the BPL.

2    The BPL's website makes its Articles of Incorporation publicly available. The Court takes judicial notice of these
     documents, and may consider them in determining whether the Court has subject matter jurisdiction. *Wells Fargo Bank,*
     *N.A. v. Wrights Mill Holdings, LLC,* ——F.Supp.3d ——, ——, 2015 WL 5122590, at *8 (S.D.N.Y. Aug.31, 2015) ("[F]or
     purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's
     website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.");
     *Belizaire v. RAV Investigative & Sec. Servs. Ltd.,* 61 F.Supp.3d 336, 347 (S.D.N.Y.2014) ("This Court ... may take judicial
     notice of the information contained on Defendant's own website.").

3    Plaintiff alleges that "[t]he jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1391." (Compl.1.) Section 1391,
     however, addresses the proper venue in which Plaintiff may bring her action if the requisite subject matter jurisdiction
     exists. 28 U.S.C. § 1391.

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.